O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DANNY FLORES, ROBERT BARADA, KEVIN WATSON, VY VAN, RAY LARA, DANE WOOLWINE, RIKIMARU NAKAMURA, CHRISTOPHER WENZEL, CRUZ HERNANDEZ, SHANNON CASILLAS, JAMES JUST, RENE LOPEZ, GILBERT LEE, STEVE RODRIGUES, and ENRIQUE DEANDA, | Case No. CV 12-04884 JGB (JCGx) **ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiffs, | |
| v. | |
| CITY OF SAN GABRIEL, and DOES 1 THROUGH 10, inclusive, | |
| Defendants. | |

Before the Court is the Motion for Summary Judgment, or in the alternative, Partial Summary Judgment filed by Defendant City of San Gabriel on May 13, 2013. (Doc. No. 20.) Also before the Court is Plaintiffs' Motion for Partial Summary Judgment filed on May 13, 2013. (Doc. No. 23.) After considering the papers timely filed and the arguments presented at the

1

August 19, 2013 hearing, the Court GRANTS Defendant's Motion for Partial Summary Judgment and GRANTS IN PART Plaintiffs' Motion for Partial Summary Judgment.  The Court directs the parties to submit further briefing addressing the issue of liquidated damages.

## I.   BACKGROUND

**A.   Procedural Background**

Plaintiffs Danny Flores, Robert Barada, Kevin Watson, Vy van, Ray Lara, Dane Woolwine, Rikimaru Nakamura, Christopher Wenzel, Cruz Hernandez, Shannon Casillas, James Just, Rene Lopez, Gilbert Lee, Steve Rodrigues, and Enrique Deanda (collectively, "Plaintiffs")  filed their Complaint on June 4, 2012. (Doc. No. 1.)  Defendant City of San Gabriel ("Defendant") filed its Answer on June 26, 2012.  (Doc. No. 5.)

Defendant filed its Motion for Summary Judgment, or in the alternative, Partial Summary Judgment, on May 13, 2013.  ("Def. Mot.," Doc. No. 20.)  In support of its Motion, Defendant filed:

- Separate Statement of Uncontroverted Facts and Conclusions of Law ("Def. SUF," Doc. No. 22-1);

- Declaration of Rayna Ospino ("Ospino Mot. Decl.," Exh. 1 to Defendant's Appendix of Evidentiary Support ("Def. Mot. Appendix"), Doc. No. 21);

- Declaration of Linda Tang ("Tang Mot. Decl.," Exh. 2 to Def. Mot. Appendix);

- Excerpts from City of San Gabriel Resolution No. 02-12, adopted January 7, 2013 ("Resolution No. 02-12," Exh. A to Def. Mot. Appendix);

- Excerpts from the City of San Gabriel Salary, Compensation and Benefit Policy Manual, dated July 3, 2010 ("Policy Manual," Exh. B to Def. Mot. Appendix); and

- Excerpts from the Memorandum of Understanding between the City of San Gabriel and the San Gabriel Police Officers' Association for 2005-2007, signed August 2, 2005 ("Mot. MOU," Exh. C to Def. Mot. Appendix).

On June 10, 2013, Plaintiffs filed their Opposition to Defendant's Motion.  ("Pl. Opp.," Doc. No. 27.) Plaintiffs filed the following documents in support of their Opposition:

- Declaration of Joseph N. Bolander ("Bolander Opp. Decl.," Doc. No. 27-1) attaching Exhibits A-B; and

3

- • Statement of Genuine Disputes of Material Fact
  ("Pl. SGD," Doc. No. 27-2).

Defendant filed its Reply on June 24, 2013.  ("Def. Reply," Doc. No. 31.)  In support of its Reply, Defendant also filed its Objections to Plaintiffs' Evidence.  ("Def. Reply Obj.," Doc. No. 32.)

Plaintiffs filed their Motion for Partial Summary Judgment on May 13, 2013.  ("Pl. Mot.," Doc. No. 23.) In support of their Motion, Plaintiffs also filed the following:

- • Declaration of Joseph N. Bolander ("Bolander Mot. Decl.," Doc. No. 23-2);
- • Statement of Uncontroverted Facts and Conclusions of Law ("Pl. SUF," Doc. No. 23-3); and
- • Request for Judicial Notice ("RJN," Doc. No. 23-4).[1]

On June 10, 2013, Defendant filed its Opposition to Plaintiffs' Motion.  ("Def. Opp.," Doc. No. 26.) Defendant filed the following documents in support of its Opposition:

_____

[1] Since the Court does not rely on the district court's order in Rob Morris v. City of Santa Maria, LA CV 12-04989 JAK (FFMx) to reach its decision, it does not take judicial notice of that document.

4

- Statement of Genuine Disputes of Material Fact ("Def. SGD," Doc. No. 26-2);

- Declaration of Rayna Ospino ("Ospino Opp. Decl.," Exh. 1 to Defendant's Appendix of Evidentiary Support in Opposition to Plaintiffs' Motion ("Def. Opp. Appendix"), Doc. No. 26-1);

- Declaration of Linda Tang ("Tang Opp. Decl.," Exh. 2 to Def. Opp. Appendix);

- Declaration of Marcella Marlowe ("Marlowe Decl.," Exh. 3 to Def. Opp. Appendix);

- Declaration of Alex Y. Wong ("Wong Decl.," Exh. 4 to Def. Opp. Appendix);

- Excerpts from the Memorandum of Understanding Between City of San Gabriel and the San Gabriel Police Officers' Association for 2005-2007, signed August 2, 2005 ("Opp. MOU," Exh. C to Def. Opp. Appendix); and

- Proposed Joint Stipulation of Fact ("Joint Stipulation," Exh. D to Def. Opp. Appendix).

Plaintiffs filed their Reply on June 24, 2013. ("Pl. Reply," Doc. No. 29.)  Plaintiffs filed the following documents in support of their Reply:

- Response to Defendant's Statement of Genuine Issues ("Pl. Resp.," Doc. No. 28); and

- Objections to Defendant's Evidence Offered in Support of Defendant's Opposition ("Pl. Reply Obj.," Doc. No. 30.)

**B.   Complaint**

In their Complaint, Plaintiffs allege that they are employed as police officers in the City of San Gabriel Police Department. (Compl., ¶¶ 3-17.) The City of San Gabriel and the San Gabriel Police Officers Association entered into the Memorandum of Understanding ("MOU") that allowed officers to choose a health insurance cash out option. (Compl., ¶ 19.) Pursuant to the MOU, Plaintiffs are entitled to receive cash back payments for any unused portion of their medical benefits. (Compl., ¶ 20.)

Plaintiffs have been exercising their option to receive the cash back payment for the unused portion of their medical benefits. (Compl., ¶ 23.) However, Defendant does not apply the cash back portions of Plaintiffs' unused medical benefits to their regular rate of pay. (Compl., ¶ 24.) Therefore, the rate Plaintiffs received for overtime hours worked did not include the cash back portions of Plaintiffs' unused medical benefits. (Compl., ¶ 25.) As a result, Defendant failed to pay Plaintiffs for overtime

1  compensation at one and a half times their regular rate

2  of pay.  (Compl., ¶ 26.)

3

4       Plaintiffs' cause of action arises under the Fair

5  Labor Standards Act "FLSA", 29 U.S.C. § 207, <u>et seq.</u>

6  Plaintiffs request an award of liquidated damages in a

7  sum equal to the amount of the unpaid compensation

8  pursuant to 29 U.S.C. § 216(d) and recovery of

9  reasonable attorney fees and costs pursuant to 29

10 U.S.C. § 216(b).  (Compl., ¶¶ 31-32.)

11

12 **C.  Parties' Requests for Relief**

13

14      Defendant filed its Motion for Summary Judgment

15 asserting the following:

16 •       Defendant is entitled to summary judgment on

17         the ground that payments made in lieu of

18         benefits to employees are excluded under 29

19         U.S.C. § 207(e)(2) or, alternatively, under 29

20         U.S.C. § 207(e)(4).

21 •       Alternatively, Defendant is entitled to partial

22         summary judgment on the ground that it

23         implemented a partial overtime exemption

24         pursuant to 29 U.S.C. § 207(k).

25

26      Plaintiffs filed their Motion asserting that they

27 are entitled to partial summary judgment on the

28 following grounds:

- Defendant cannot meet its burden of demonstrating that payments made in lieu of benefits are excluded under section 207(e)(4) since these payments are not made to a trustee or third person;

- Each Plaintiff's total monthly benefit allowance should be included in the regular rate of pay calculation because Defendant's plan does not qualify as a "bona fide" plan pursuant to section 207(e)(4);

- Plaintiffs are entitled to an award of liquidated damages; and

- Plaintiffs are entitled to a three-year statute of limitation.

**D.   Summary of Court's Ruling:**

For the reasons set forth below, the Court finds the following:

- Defendant's payments to Plaintiffs made in lieu of benefits are not excludable under section 207(e)(2) from the regular rate calculation;

- The payments made in lieu of benefits are also not excludable under section 207(e)(4);

- To the extent that Defendant makes contributions under the Plan to third parties,

these contributions are excludable under 29
U.S.C. § 207(e)(4);

- Plaintiffs' claims are governed by a two-year
  statute of limitations under 29 U.S.C. §
  255(a);

- Defendant is liable to Plaintiffs for FLSA
  overtime only to the extent that Plaintiffs
  worked in excess of 86 hours in a 14-day work
  period since Defendant implemented a partial
  overtime exemption pursuant to section 207(k);
  and

- Before the Court decides the issue of
  liquidated damages, the Court directs the
  parties to submit further briefing addressing
  the issue.

## II. LEGAL STANDARD[2]

Federal Rule of Civil Procedure 56 empowers the
Court to enter summary judgment on factually
unsupported claims or defenses, and thereby "secure the
just, speedy and inexpensive determination of every
action." Celotex Corp. v. Catrett, 477 U.S. 317, 325
(1986). Summary judgment is appropriate if the
"pleadings, depositions, answers to interrogatories,

---

[2] Unless otherwise noted, all references to "Rule"
refer to the Federal Rules of Civil Procedure.

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. This burden may be satisfied by either (1) presenting evidence to negate an essential element of the non-moving party's case; or (2) showing that the non-moving party has failed to sufficiently establish an essential element to the non-moving party's case. Id. at 322-23. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." Id. at 325. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the non-moving party's claim. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).

1

2       However, where the moving party bears the burden of

3  proof at trial, the moving party must present

4  compelling evidence in order to obtain summary judgment

5  in its favor.  United States v. One Residential

6  Property at 8110 E. Mohave, 229 F. Supp. 2d 1046, 1047

7  (S.D. Cal. 2002) (citing Torres Vargas v. Santiago

8  Cummings, 149 F.3d 29, 35 (1st Cir. 1998) ("The party

9  who has the burden of proof on a dispositive issue

10  cannot attain summary judgment unless the evidence that

11  he provides on that issue is conclusive.")).  Failure

12  to meet this burden results in denial of the motion and

13  the Court need not consider the non-moving party's

14  evidence.  One Residential Property at 8110 E. Mohave,

15  229 F. Supp. 2d at 1048.

16

17      Once the moving party meets the requirements of

18  Rule 56, the burden shifts to the party resisting the

19  motion, who "must set forth specific facts showing that

20  there is a genuine issue for trial." Anderson, 477

21  U.S. at 256.  The non-moving party does not meet this

22  burden by showing "some metaphysical doubt as to the

23  material facts." Matsushita Elec. Indus. Co., Ltd. v.

24  Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The

25  United States Supreme Court has held that "[t]he mere

26  existence of a scintilla of evidence in support of the

27  non-moving party's position is not sufficient."

28  Anderson, 477 U.S. at 252.  Genuine factual issues must

exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. When ruling on a summary judgment motion, the Court must examine all the evidence in the light most favorable to the non-moving party. Celotex, 477 U.S. at 325. The Court cannot engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the jury. Anderson, 477 U.S. at 255. Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. See Schneider v. TRW, Inc., 938 F.2d 986, 990-91 (9th Cir. 1991).

Cross-motions for summary judgment do not necessarily permit the judge to render judgment in favor of one side or the other. Starsky v. Williams, 512 F.2d 109, 112 (9th Cir. 1975). The Court must consider each motion separately "on its own merits" to determine whether any genuine issue of material fact exists. Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). When evaluating cross-motions for summary judgment, the court must analyze whether the record demonstrates the existence of genuine issues of material fact, both in cases where both parties assert that no material factual issues exist, as well as where the parties

1  dispute the facts.  See Fair Hous. Council of Riverside

2  Cnty., 249 F.3d at 1136 (citation omitted).

3

4                      III. DISCUSSION

5

6  **A.   Evidentiary Objections**

7

8      All of Defendant's objections to Plaintiffs'

9  evidence filed in support of Plaintiffs' Opposition to

10 Defendant's Motion are on grounds of relevance under

11 Federal Rule of Evidence 402.  (See "Def. Reply Obj.,"

12 Doc. No. 32.)  Plaintiffs also object to Defendant's

13 evidence offered to show that Defendant did not have

14 actual knowledge that its actions constituted

15 violations of the FLSA, in part, on the ground that it

16 constituted an improper legal conclusion.  (See "Pl.

17 Reply Obj.," Doc. No. 30.)  "Objections to evidence on

18 the ground that it is irrelevant, speculative, and/or

19 argumentative, or that it constitutes an improper legal

20 conclusion are all duplicative of the summary judgment

21 standard itself" and are thus "redundant" and

22 unnecessary to consider here.  Burch v. Regents of

23 Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D.

24 Cal. 2006); see Anderson, 477 U.S. at 248 ("Factual

25 disputes that are irrelevant or unnecessary will not be

26 counted.").  Thus, the Court does not rule on any of

27 the parties' relevance objections or objections as to

28 improper legal conclusions.

1

2      Plaintiffs also object to Defendant's evidence

3  regarding Defendant's lack of actual knowledge on the

4  ground that such evidence constituted improper lay

5  opinion in violation of Federal Rule of Evidence 701.

6  (See "Pl. Reply Obj.," Doc. No. 30.)  "The distinction

7  between lay and expert witness testimony is that lay

8  testimony results from a process of reasoning familiar

9  in everyday life, while expert testimony results from a

10  process of reasoning which can be mastered only by

11  specialists in the field." U.S. v. Corona, 359 Fed.

12  Appx. 848, 851 (9th Cir. 2009) (internal citations and

13  quotations omitted).  "If the opinion rests in any way

14  upon scientific, technical, or other specialized

15  knowledge, its admissibility must be determined by

16  reference to Rule 702, not Rule 701." U.S. v. Garcia,

17  413 F.3d 201, 215 (2nd Cir. 2005) (internal citations

18  and quotations omitted); see also, S.E.C. v. Sabhlok,

19  495 Fed. Appx. 786, 787 (9th Cir. 2012) (citing Fed. R.

20  Evid. 701(c)) ("Rule 701(c) of the Federal Rules of

21  Evidence forbids only lay opinion testimony that is

22  'based on scientific, technical, or other specialized

23  knowledge within the scope of Rule 702.'").  Marcella

24  Marlowe's statements in her declaration are rationally

25  based on her perception and knowledge of the absence of

26  any prior complaints as to the regular rate

27  calculation.  ("Marlowe Decl.," Exh. 3 to Def. Opp.

28  Appendix, ¶¶ 5-8.)  Given her position as the Human

Resources Director and the top manager in the Human
Resources Office, Ms. Marlowe would have known of any
issues or complaints regarding the regular rate
calculation.  (Id., ¶ 7.)  Therefore, Ms. Marlowe's
opinion qualifies as a lay opinion.  Accordingly, the
Court OVERRULES Plaintiffs' objections as Ms. Marlowe's
statement to the extent that they object to her
statement as an improper lay opinion.

**B.   Uncontroverted Facts**

     Both sides cite facts that are not relevant to
resolution of the motions.  To the extent certain facts
are not mentioned in this Order, the Court has not
relied on them in reaching its decision.  The Court
finds the following material facts are supported
adequately by admissible evidence and are
uncontroverted.  They are "admitted to exist without
controversy" for the purposes of this Motion.  L.R. 56-
3; see generally Fed. R. Civ. P. 56.

     **1.   The Work Period and Overtime**

     Plaintiffs are employed as full-time police
officers by Defendant and are members of the San
Gabriel Police Officers' Association ("POA"), a
collective bargaining unit.  (Pl. SUF, ¶¶ 1-2; Def.
SGD, ¶¶ 1-2; Def. SUF, ¶ 5; Pl. SGD, ¶ 5.)  At all

times during their employment, Plaintiffs have been "non-exempt" hourly employees. (Pl. SUF, ¶ 3; Def. SGD, ¶ 3.)

Since 1994, Defendant has utilized a 14-day work period for calculation of overtime for sworn law enforcement personnel. (Def. SUF, ¶ 1; Pl. SGD, ¶ 1.) Since 2003, Defendant's adoption of the 14-day law enforcement work period has been memorialized in various City resolutions and documents. (Def. SUF, ¶ 2; Pl. SGD, ¶ 2.) The number of hours worked by full-time Police Department personnel in a "bi-weekly" period is 80 hours. (Def. SUF, ¶ 3-4; Pl. SGD, ¶ 3-4.) Article 10 of the 2005-2007 Memorandum of understanding ("MOU") between Defendant and POA defines overtime as "all hours worked over (80) in the two (2) week pay period of employees." (Def. SUF, ¶ 6; Pl. SGD, ¶ 6.) Accordingly, Defendant calculated and paid overtime based upon hours worked over 80 in the 14-day period. (Def. SUF, ¶ 7; Pl. SGD, ¶ 7.) Defendant restated the 2005-2007 MOU's definition of overtime in its Salary, Compensation and Benefits Policy Manual. (Def. SUF, ¶ 9; Pl. SGD, ¶ 9.) Although the overtime language in the 2005-2007 MOU has not been incorporated into subsequent MOUs, Defendant's practice of calculating and paying overtime based upon the 80 hour/14-day period has not changed. (Def. SUF, ¶¶ 8, 10; Pl. SGD, ¶¶ 8, 10.) The 14-day payroll period in use by

Defendant coincides with the 14-day work period for sworn law enforcement personnel. (Def. SUF, ¶ 11; Pl. SGD, ¶ 11.)

Defendant requires Plaintiffs to record their hours worked, including any overtime hours, on bi-weekly, 14-day "Time and Attendance Reports" which indicate they cover a two-week, 14-day work period. (Def. SUF, ¶ 12; Pl. SGD, ¶ 12.) Defendant assigns certain police officers to a 3/12 schedule under which each employee was assigned three 12-hour shifts one week and four 12-hour shifts in the other, resulting in a total of 84 hours worked. (Def. SUF, ¶ 13; Pl. SGD, ¶ 13.) When the 3/12 schedule was first implemented, Defendant credited each employee with 4 hours of compensatory time off in each payroll period to compensate for the 84 hours worked in the two-week period. (Def. SUF, ¶ 14; Pl. SGD, ¶ 14.)

Subsequently, pursuant to the 2005-2007 MOU, the City and the POA agreed that employees assigned to a 3/12 schedule would be credited with four hours of compensatory time at time and a half for the four regularly scheduled hours worked over 80 during each work period. (Def. SUF, ¶ 15; Pl. SGD, ¶ 15.) According to Defendant's current practice, for officers assigned a 3/12 schedule, hours worked in excess of 84 regularly scheduled hours may either be paid out or

credited as compensatory time at time and one half at the discretion of the employee. (Def. SUF, ¶ 16; Pl. SGD, ¶ 16.)  For employees working other schedules, hours worked over 80 are paid out, or compensatory time is credited, at time and one half. (Def. SUF, ¶ 17; Pl. SGD, ¶ 17.)

### 2.   Flexible Benefit Plan

In August of 1993, Defendant adopted a Flexible Benefit Plan ("Plan") for purposes of providing benefits to employees. (Def. SUF, ¶¶ 18, 24; Pl. SGD, ¶¶ 18, 24.) Pursuant to the Plan, Defendant makes a set and fixed Employer Contribution on behalf of employees on an annual basis pursuant to City Council resolution. (Def. SUF, ¶ 19; Pl. SGD, ¶ 19.)  The Employer Contribution is converted into Cafeteria Plan Benefit Dollars which are then made available to employees for purchase of select benefits. (Def. SUF, ¶ 20; Pl. SGD, ¶ 20.)  A portion of the Cafeteria Plan Benefit Dollars is applied toward dental and vision insurance for the employee. (Def. SUF, ¶ 21; Pl. SGD, ¶ 21.)  The employee may then elect one or more additional benefits. (Def. SUF, ¶ 22; Pl. SGD, ¶ 22.)

Upon providing proof of alternative medical coverage, the employee may opt out of enrollment in medical coverage under the Plan. (Def. SUF, ¶ 23; Pl.

SGD, ¶ 23.)  The Plan gives employees who have
alternate medical coverage the option to waive medical
coverage offered by Defendant and receive any unused
portion of their monthly benefit allowance as taxable
income on their paycheck. (Pl. SUF, ¶ 7; Def. SGD, ¶
7.)  Likewise, if any of the Employer Contributions
have not been applied toward the purchase of available
benefits, any excess amounts are paid to the employee
as taxable income in lieu of benefits. (Def. SUF, ¶
25; Pl. SGD, ¶ 25.)

Employees who elect to receive some or all of their
monthly benefit allowance in cash[3] receive two direct
payments per month that appear as a designated line
item on their paychecks. (Pl. SUF, ¶ 13; Def. SGD, ¶
13.)  Cash payments made to employees pursuant to the
Plan are not made to a trustee or third person on
behalf of the employee. (Pl. SUF, ¶ 14; Def. SGD, ¶
14.)  The cash value received is subject to federal and
state withholding taxes, Medicare taxes, and
garnishment. (Pl. SUF, ¶ 16; Def. SGD, ¶ 16.)

---

[3] The term "cash payments," as used by the parties,
refers to the unused portion of the monthly benefit
allowance that employees receive as taxable income on
their paychecks.  Employees do not receive these
payments in the form of cash.  Rather, the payments
appear as a designated line item on the employees'
paychecks every pay period. (Pl. SUF, ¶ 13; Def. SGD,
¶ 13.)

The Employer Contribution to the Plan in a given pay period is fixed and does not vary based upon the number of hours an employee works. (Def. SUF, ¶ 26; Pl. SGD, ¶ 26.)  The excess amount an employee may receive back as cash from the Plan each month is also fixed, and is based upon the extent of the employee's utilization of available benefits. (Def. SUF, ¶ 28; Pl. SGD, ¶ 28.)  Therefore, the amount an employee may receive as cash in lieu of benefits is not contingent upon the number of hours worked or the employee's productivity. (Def. SUF, ¶¶ 29-30; Pl. SGD, ¶¶ 29-30.)

In 2009, direct cash payments to employees as cash in lieu of benefits amounted to 46.725% of total Plan contributions. (Pl. SUF, ¶ 20; Def. SGD, ¶ 20.)  In 2010, direct cash payments to employees made in lieu of benefits totaled 42.842% of total Plan contributions. (Pl. SUF, ¶ 22; Def. SGD, ¶ 22.)  In 2011, direct cash payments to employees made in lieu of benefits made up 43.934% of total Plan contributions. (Pl. SUF, ¶ 24; Def. SGD, ¶ 24.)  In 2012, direct cash payments to employees made in lieu of benefits made up 45.179% of total Plan contributions. (Pl. SUF, ¶ 26; Def. SGD, ¶ 26.)

Since at least 2003, Defendant has not included the value of cash payments made in lieu of benefits in the calculation of the recipient's FLSA regular rate of

pay.  (Pl. SUF, ¶ 27; Def. SGD, ¶ 27.)  Neither does Defendant include the entire monthly benefit allowance amount in the calculation of each individual employee's FLSA regular rate of pay.  (Pl. SUF, ¶ 29; Def. SGD, ¶ 29.)  Defendant has not conducted an inquiry into whether or not these payments are properly excludable from the FLSA regular rate calculation.  (Pl. SUF, ¶ 28; Def. SGD, ¶ 28.)  Defendant did not conduct a review of its Plan to ascertain what percentage of total Plan contributions are paid out in cash to employees prior to the filing of this lawsuit.  (Pl. SUF, ¶ 30; Def. SGD, ¶ 30.)

Over the years, Defendant regularly met with the POA to discuss issues of concern regarding wages and compensation of employees, including overtime pay.[4] (Def. SGD, ¶ 17; Pl. Resp., ¶ 17.)  Despite these meetings and discussions between Defendant and the POA, at no time prior to the filing of this action did either the POA or employees ever raise Defendant's failure to include in the FLSA regular rate the amounts

---

[4] Defendant claims that by meeting with the POA, Defendant, by extension, met with each of the Plaintiffs. (Def. SGD, ¶ 17.)  Defendant's cited evidence does not provide support to Defendant's statement.  (See Marlowe Decl., Exh. 3 to Def. Opp. Appendix, ¶ 5.)  Plaintiffs oppose Defendant's statement but do not cite to any supporting evidence to the contrary.  (Pl. Resp., ¶ 17.)  The dispute as to whether meeting with the POA is by extension meeting with each of the Plaintiffs is immaterial as it has no bearing on the issues now before the Court.

contributed into the Plan, including cash payments to employees in lieu of benefits.  (Def. SGD, ¶ 19; Pl. Resp., ¶ 19.)

Plaintiffs are paid overtime compensation pursuant to their labor agreement with Defendant for all hours worked in excess of eighty hours in a two-week work period.  (Pl. SUF, ¶ 31; Def. SGD, ¶ 31.)  Plaintiffs each received cash payments in lieu of benefits at some point in time between June 1, 2009 and June 1, 2012. (Pl. SUF, ¶ 32; Def. SGD, ¶ 32.)

### 3.  Section 207(k) Exemption

Defendant's Salary, Compensation and Benefits Policy ("Policy") expressly states that firefighters employed by Defendant are subject to the 207(k) exemption, but it makes no reference to the 207(k) exemption as it pertains to police officers.[5]  (Pl. SGD, ¶ 46; Exh. B to Bolander Opp. Decl., Exh. 3 to Deposition of Linda Tang ("Tang Depo.") at 10-13, 29-31.)  While the Policy explicitly provides that firefighters are subject to 7(k) partial overtime exemption, the Policy does not mention 7(k) exemption or the FLSA in describing overtime threshold for police

---

[5]  Defendant does not dispute the facts relating to the absence of reference to the 207(k) exemption as it pertains to police officers.  Rather, Defendant objects to the evidence as irrelevant.  (Def. Reply Obj.)

officers.  (Pl. SGD, ¶ 47; Exh. B to Bolander Decl.,
Exh. 3 to Tang Depo. at 30-31.)  None of the other
documents cited by Defendant as evidencing the election
of 207(k) exemption state that police officers are
subject to the 207(k) exemption.  (Pl. SGD, ¶ 48;
Resolution No. 02-12, Exh. A to Def. Mot. Appendix at
7-8; Mot. MOU, Exh. C to Def. Mot. Appendix at 3.)

**C.   Exclusion of Payments under 29 U.S.C. § 207(e)(2)**

     Under the FLSA, employees working overtime must be
compensated "at a rate not less than one and one-half
times the regular rate at which he is employed."  29
U.S.C. § 207(a)(1).  The main issue before the Court is
whether Defendant's exclusion of payments made pursuant
to the Flexible Benefit Plan ("Plan") from the regular
rate calculation, which results in a lower calculation
of overtime pay, violates the FLSA.  Defendant first
argues that its exclusion of these payments is proper
under section 207(e)(2) since the payments are not made
as compensation for hours worked, but rather represent
fixed payments to employees for opting out of certain
benefits provided by Defendant.  (Def. Mot. at 10-13.)

     The employer bears the burden of establishing that
a payment is exempt under the FLSA.  Idaho Sheet Metal
Works, Inc. v. Wirtz, 383 U.S. 190, 209 (1966).  "FLSA
exemptions are to be narrowly construed against . . .

1   employers and are to be withheld except as to persons
2   plainly and unmistakably within their terms and
3   spirit." Klem v. Cnty. Of Santa Clara, Cal., 208 F.3d
4   1085, 1089 (9th Cir. 2000) (internal citations and
5   quotations omitted).

6

7       **1.   Ninth Circuit Case Law**

8

9       Defendant argues that payments to employees made in
10  lieu of benefits under the Plan are not made as
11  compensation for the hours of employment under the
12  final clause of section 207(e)(2).  (Def. Mot. at 10-
13  13.)  Title 29 U.S.C. § 207(e)(2) excludes from the
14  "regular rate"

15          [P]ayments made for occasional periods when no
16          work is performed due to vacation, holiday,
17          illness, failure of the employer to provide
18          sufficient work, or other similar cause;
19          reasonable payments for traveling expenses, or
20          other expenses, incurred by an employee in the
21          furtherance of his employer's interests and
22          properly reimbursable by the employer; and
23          *other similar payments to an employee which are*
24          *not made as compensation for his hours of*
25          *employment . . .*
26  29 U.S.C. § 207(e)(2) (emphasis added).  The Ninth
27  Circuit has not addressed whether payments made to
28  employees out of flexible benefit plans must be

included in an employee's regular rate for purposes of
the FLSA.  While other district courts in California
have addressed whether other payments and benefits are
excluded from the regular rate calculation, none has
addressed the application of section 207(e)(2) to
payments made under flexible benefit plans.

The Ninth Circuit addressed the issue of whether
"supplemental payments, designed to bring the wage of a
partially disabled worker up to his or her
predisability wage level," should be included in the
regular rate of pay used to calculate overtime in Local
246 Util. Workers Union of Am. v. S. Cal. Edison Co.,
83 F.3d 292, 294 (9th Cir. 1996) ("Local 246").  The
court held that the employer "must include these
supplemental payments in the regular rate used to
calculate overtime."  Id. at 296.  Like Defendant here,
the employer in Local 246 argued that the supplemental
payments were not compensation for hours worked since
they were not tied to specific working hours.  Id. at
295.

The Ninth Circuit held that "[t]he key point is
that the pay or salary is compensation for work, and
the regular rate therefore must be calculated by
dividing all compensation paid for a particular week by
the number of hours worked in that week."  Id. at 295
(citing 29 C.F.R. § 778.109).  The Court added that "it

1  makes no difference whether the supplemental payments

2  are tied to a regular weekly wage or regular hourly

3  wage."[6]  Id.

4

5      Following the reasoning in Local 246, the Court

6  finds Defendant's payments made in lieu of benefits

7  under the Plan constitute compensation for service even

8  if they are not tied to a regular weekly or hourly

9  wage.  Local 246 noted that "pay or salary that is paid

10 by the week or longer period is still counted in

11 calculating the regular hourly rate."  Local 246, 83

12 F.3d at 295 (citing 29 C.F.R. § 778.109).  Here,

13 employees electing to receive some or the entire

14 monthly benefit allowance in cash receive two cash

15 payments per month which appear on their paychecks and

16 are subject to federal and state taxes.  (Pl. SUF, ¶¶

17 13, 16; Def. SGD, ¶¶ 13, 16.)  Since the employees

18 receive these payments periodically and the payments

19 are subject to taxes, they are remuneration for work

20 performed and therefore must be included in the regular

21 rate of pay used in calculating overtime.[7]  See Retail

22

23     [6] The Seventh Circuit in Reich v. Interstate Brands
   Corp., 57 F.3d 574, 577 (7th Cir. 1995) reiterated that
24 section 207(e)(2) "cannot possibly exclude every
   payment that is not measured by the number of hours
25 spent at work."  Id. at 577.

26     [7] In Minizza v. Stone Container Corp. Corrugated
   Container Div. East Plant, 842 F.2d 1456 (3rd Cir.
27 1988), the Third Circuit concluded that two lump sum
   payments made pursuant to the terms of a collective
28        (continued . . .)

26

1   _Indus. Leaders Ass'n v. Fielder_, 475 F.3d 180, 193 (4th

2   Cir. 2007) ("Healthcare benefits are a part of the

3   total package of employee compensation an employer

4   gives in consideration for an employee's services.").

5   As the _Local 246_ Court noted, the fact that these

6   payments are not tied to specific hours worked has no

7   bearing on the characterization of the payment as

8   compensation for work.  _Local 246_, 83 F.3d at 295 n.2

9   (citing _Reich v. Interstate Brands Corp._, 57 F.3d 574,

10  577 (7th Cir. 1995), _cert. denied_, 516 U.S. 1042 (1996)

11  ("Even if payments to employees are not measured by the

12  number of hours spent at work, that fact alone does not

13  qualify them for exclusion under section 207(e)(2).")).

14

15

16  _____

        ( . . . continued)

17  bargaining agreement were excluded from regular rate
    calculations under section 207(e)(2) because they "were
18  nothing more or less than an inducement by the
    employers to the employees to ratify the agreement on
19  the terms proposed by the employers."  _Id._ at 1457,
    1462.  The Court finds the Third Circuit decision in
20  _Minizza_ inapposite to the instant case.  Here,
21  Defendant adopted the Plan for the purpose of providing
    benefits to its employees.  (Def. SUF, ¶¶ 18, 24; Pl.
22  SGD, ¶¶ 18, 24.)  The cash payments here are taxed as
    wages.  (Pl. SUF, ¶ 16; Def. SGD, ¶ 16.)  Unlike the
23  lump sum payments in _Minizza_ payable once a year for
24  two consecutive years, the cash payments made in lieu
    of benefits here are made on a bi-weekly basis and
25  appear on the employees' paychecks.  (Pl. SUF, ¶ 13;
26  Def. SGD, ¶ 13.)

27

28

                           27

1    Defendant argues that payments made in lieu of
2  benefits are analogous to compensation for lunch
3  periods that are excludable under section 207(e)(2).
4  (Def. Mot. at 11-12.)  In Ballaris v. Wacher Siltronic
5  Corp., 370 F.3d 901, 909 (9th Cir. 2004), the Ninth
6  Circuit held that payments for lunch periods were
7  excluded from calculation of the regular rate under
8  section 207(e)(2).  The court recognized that the
9  parties treated the lunch period as non-working time.
10 Ballaris, 370 F.3d at 909.  Therefore, the court held
11 that these payments "constituted an additional benefit
12 for employees and not compensation for hours worked."
13 Id. at 909.

14

15    The facts in Ballaris are distinguishable from
16 those before the Court.  While the parties in Ballaris
17 agreed that the lunch period constituted non-working
18 time, there is no evidence here that employees receive
19 the benefit payments or cash in lieu of benefits for
20 time spent not working.  An examination of the
21 statutory language of section 207(e)(2) highlights the
22 distinction.  Section 207(e)(2) excludes from the
23 regular rate payments that are similar to "payments
24 made for occasional periods when no work is performed
25 due to vacation, holiday, illness, failure of the
26 employer to provide sufficient work . . ."  29 U.S.C. §
27 207(e)(2).  Just like vacation periods, holidays, and
28 time off due to illness, lunch periods constitute time

when no work is performed.  On the other hand, payments
made in lieu of benefits under the Plan are not
analogous to non-working periods enumerated in section
207(e)(2) since they are not payments made for a period
where no work is performed.[8]

Rather, payments made in lieu of benefits are more
analogous to the reimbursements at issue in Adoma v.
Univ. of Phoenix, Inc., 779 F. Supp. 2d 1126 (E.D. Cal.
2011).  At issue in Adoma were tuition benefits paid to
employees and their dependents for courses taken at the
defendant university and other subsidiary institutions
(internal program) and non-subsidiary institutions
(external program).  Adoma, 779 F. Supp. 2d at 1128-29.

---

[8] Defendant argues that the payments here are
analogous to buy backs of unused benefits.  (Def. Mot.
at 13.)  Defendant relies in part on Chavez v. City of
Albuquerque, 630 F.3d 1300 (10th Cir. 2011), where the
Tenth Circuit distinguished between buy backs of
vacation days and sick days and held that while sick
leave buy-backs must be included in the regular rate,
vacation leave buy-backs were excludable under section
207(e)(2).  Id. at 1309-1310.  In Chavez, the court
focused on the burden or benefit to the employer
resulting from use of sick days and vacation days.  Id.
at 1309-1310.  Here, by contrast, the burden on
Defendant does not vary depending on employee's use of
benefits under the Plan since Defendant's contribution
on behalf of employees is set and fixed on an annual
basis.  (Def. SUF, ¶ 19; Pl. SGD, ¶ 19.)  Therefore,
the Chavez Court's reasoning is not instructive on the
issue before the Court.

The court held that since "the tuition benefit is not a payment made for a period where no work is performed," it had to analyze whether the payment is similar to "reasonable payments for traveling expenses, or other expenses, incurred by the employee in the furtherance of his employer's interests and properly reimbursable to the employer" under section 207(e)(2). Id. After discussing the Department of Labor's regulations and 1994 Opinion Letter, the court reasoned that "[o]ne determines whether a payment is compensation for work by considering whether the benefit primarily benefits the employee or the employer." Id. at 1137. The court held that the internal benefit was not excludable from the regular rate of pay since the benefit to the employee outweighed that to the employer.[9] Id. at 1138.

As in Adoma, there is no evidence here that Defendant made cash payments in lieu of benefits for periods where no work is performed. Rather, the excess amount an employee may receive back as cash from the Plan is based on the extent of the employee's utilization of available benefits. (Def. SUF, ¶ 28; Pl. SGD, ¶ 28.) Therefore, the payments are excludable under section 207(e)(2) only if they are similar to

_____

[9] The court in Adoma held that there was insufficient evidence concerning the external tuition benefit, and it declined to determine whether the external benefit primarily benefits the employer or the employee. Adoma, 779 F. Supp. 2d at 1139.

payments made for "traveling expenses, or other
expenses, incurred by an employee in furtherance of his
employer's interests . . ." 29 U.S.C. ¶ 207(e)(2).  It
is uncontroverted that Defendant adopted the Plan to
provide benefits to its employees. (Def. SUF, ¶ 18,
24; Pl. SGD, ¶ 18, 24.)  Even though one can argue that
Defendant also derives a benefit from the Plan by
having healthier employees that are more productive,
cash payments to employees clearly benefit them more
than their employer.  Accordingly the Court finds,
based on the uncontroverted facts, that payments made
in lieu of benefits under the Plan are not excludable
from the regular rate of pay since they are not similar
to the examples enumerated in section 207(e)(2)
relating to non-working hours or expenses incurred for
the benefit of the employer.

**2.   Policy Considerations**

Defendant argues that public policy favors
exclusion of the cash-in-lieu of benefits payments from
calculation of the regular rate.  (Def. Mot. at 13.)
Defendant contends that if these cash payments are not
excluded, "employers will be less likely to allow
employees to receive the surplus as cash in order to
avoid an increase in overtime liability and paying more
in benefits than intended." (Id.)  Thus, Defendant
contends that the interpretation deeming the cash

payments exempt from inclusion in the regular rate under section 207(e)(2) is the interpretation that most favors the employees.  (<u>Id.</u>)

   "FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakably within their terms and spirit." <u>Klem v. Cnty. Of Santa Clara, Cal.</u>, 208 F.3d 1085, 1089 (9th Cir. 2000) (internal citations and quotations omitted).  Thus, the FLSA is construed liberally in favor of employees.  <u>Cleveland v. City of Los Angeles</u>, 420 F.3d 981, 988 (9th Cir. 2005). Interpreting section 207(e)(2) to exclude cash payments made in lieu of benefits would favor the employer rather than the employee since it results in a lower calculation of overtime pay.  On the other hand, excluding the cash payments from the regular rate calculation benefits the employer who does not have to pay the increased overtime rate.  While Defendant makes a compelling argument, a narrow construction of the FLSA exemptions compels a finding that cash payments are not excludable under section 207(e)(2).  Even though this interpretation of section 207(e)(2) results in an increase in overtime liability, an increase in costs cannot be the basis for exclusion of cash payments from regular rate calculation.

Narrowly construing the FLSA exemptions and in light of Ninth Circuit precedent, the Court holds that cash payments made in lieu of benefits under the Plan are not excludable under section 207(e)(2) from calculation of the regular rate.

**D.   Exclusion under § 207(e)(4)**

Plaintiffs contend that they are entitled to partial summary judgment on the basis that Defendant's direct cash payments made in lieu of benefits cannot be excluded from the regular rate under 29 U.S.C. § 207(e)(4).  (Pl. Mot. at 11-15.)  Plaintiffs also contend that the value of all individual Plan contributions must be included in the regular rate since the Plan is not a "bona fide" plan under section 207(e)(4).  (Pl. Mot. at 18-20.)  Defendant counters that even if the direct payments are not excludable under section 207(e)(2), the payments are excludable under section 207(e)(4) as interpreted in 29 C.F.R. § 778.215.  (Def. Mot. at 17-20.)

**1.   Exclusion of Direct Cash-in-lieu of Benefits Payments**

Title 29 U.S.C. § 207(e)(4) excludes from the regular rate of pay "contributions irrevocably made by an employer to a trustee or third person pursuant to a

bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees." 29 U.S.C. § 207(e)(4).  In construing statutory provisions, courts "first look to the language of the statute to determine whether it has a plain meaning." Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 951 (9th Cir. 2009) (citation omitted). Courts should presume that the "legislature says in a statute what it means and means in a statute what it says there." Id. (internal citations and quotations omitted).  "Thus, [a court's] inquiry begins with the statutory text, and ends there as well if the text is unambiguous." Id. (internal citations and quotations omitted).

In Local 246, the court found that "there is no indication that any of the supplemental payments *to the employees* consisted of contributions made by [the employer] irrevocably to a trust." Local 246, 83 F.3d at 296.  The court emphasized that section 207(e)(4) "deals with contributions by the employer, not payments to the employee." Id.  The Court held that since the employer failed to show that any part of its supplemental payments to the employees was made irrevocably to a trust, section 207(e)(4) did not deem the supplemental payments excludable from the regular rate calculation.  Id.

1     Based on the plain language of section 207(e)(4),

2   an employer's contribution may be excluded from

3   calculation of the regular rate if the employer

4   irrevocably makes the contribution to a trustee or

5   third person.  29 U.S.C. § 207(e)(4).  Here, as in

6   Local 246, it is undisputed that Defendant made all the

7   cash-in-lieu of benefits payments directly to

8   Plaintiffs rather than a trustee or third party.[10]  (Pl.

9   SUF, ¶¶ 13-14; Def. SGD, ¶¶ 13-14.)  Defendant does not

10  argue that any part of the payment to Plaintiffs

11  consisted of payments Defendant made irrevocably to a

12  trust or third party.  Since the language of section

13  207(e)(4) is unambiguous as to the requirement that the

14  contribution be made to a third party or trustee, the

15  Court finds it unnecessary to resort to the Department

16

17

18     [10] Defendant argues that Local 246 is
19  distinguishable from the present case since the court
    found that the contributions in Local 246 were not
20  excludable under section 207(e)(2).  (Def. Opp. at 9-
    10.)  However, as discussed above, the Court finds that
21  Defendant's cash payments are also not excludable under
    section 207(e)(2).  More importantly, the court's
22  discussion of section 207(e)(4) in Local 246 is
    independent of its holding regarding the applicability
23  of section 207(e)(2).  See Local 246, 83 F.3d at 295-
    96.  Since sections 207(e)(2) and (e)(4) offer
24  alternative grounds for the exclusion of certain
    payments from calculation of the regular rate, and the
25  court held that the supplemental payments did not
    qualify for exclusion under section 207(e)(2), the
26  Court had to analyze whether the payments can be
    excluded pursuant to section 207(e)(4).  Contrary to
27  what Defendant argues, Local 246's discussion of
    section 207(e)(4) is not dicta.

28

of Labor's interpretation as to that requirement.[11]
Therefore, Defendant's cash payments to Plaintiffs made
in lieu of benefits are not excluded under the plain
language of section 207(e)(4) and must be included in
the calculation of the regular rate.

## 2.   Exclusion of the Entire Value of the Monthly Benefits Allowance

Plaintiffs next argue that the entire value of the
monthly benefit allowance should be included in the
regular rate of pay because Defendant's Plan does not
qualify as a bona fide plan under section 207(e)(4).
(Pl. Mot. at 18-21.)  Defendant responds that, under
the plain meaning of the term, Defendant's Plan is a
bona fide plan, and Defendant's contributions are
exempt under section 207(e)(4).  (Def. Opp. at 8-10.)
Defendant urges the Court to disregard the language of
the Department of Labor's ("DOL") interpretive
bulletin, 29 C.F.R. § 778.215, and a subsequent DOL
opinion letter, dated July 2, 2003 ("2003 Opinion
Letter") because the language of section 207(e) is
unambiguous, and these two interpretive documents are

---

[11] Even though the Court does not rely on the Department of Labor's interpretation of section 207(e)(4), the Court notes that 29 C.F.R. § 778.215 reiterates the requirement that payments can only be excluded under section 207(e)(4) if they are made to a trustee or third person.  See 29 C.F.R. § 778.215(a)(4).

inconsistent with one another.[12] (Def. Opp. at 10-14.)
The Court will first address whether the DOL's
interpretations in section 778.215 and the 2003 Opinion
Letter conflict with each other or conflict with the
language of section 207(e)(4). The Court will then
address whether Defendant's contribution into the Plan
is excludable under section 207(e)(4).

### a. Department of Labor's Interpretations

As stated above, section 207(e)(4) excludes from
"regular rate" any "contributions irrevocably made by
an employer to a trustee or third person pursuant to a
bona fide plan for providing old-age, retirement, life,
accident, or health insurance or similar benefits for
employees." 29 U.S.C. § 207(e)(4). Therefore, under
the statutory language, a payment can only be excluded
under subsection (e)(4) if (1) it is made to a trustee
or third person, and (2) it is made pursuant to a bona
fide plan. See Id. Defendant urges the Court to adopt
a dictionary definition of the term "bona fide" as one
that is "1. Made in good faith; without fraud or

_____

[12] Defendant advances conflicting arguments with
regards to the applicability of 29 C.F.R. § 778.215.
In its Opposition to Plaintiffs' Motion, Defendant
argues that the Court should not consider section
778.215 since it is not persuasive and conflicts with
the 2003 Opinion Letter. (Def. Opp. at 10-14.) On the
other hand, Defendant relies on section 778.215 in its
Motion for Summary Judgment to argue that its cash
payments made in lieu of benefits are exempt under
section 207(e)(4). (Def. Mot. at 17-20.)

deceit. 2. Sincere; genuine." (Def. Opp. at 8.)
However, it is unclear from the statutory language
whether Congress used the term "bona fide" in its
ordinary meaning or as a term of art.  In light of the
statutory ambiguity, the Court examines 29 C.F.R. §
778.215(a)(5) for guidance.  See <u>Madison v. Resources
for Human Development, Inc.</u>, 233 F.3d 175, 185 (3rd
Cir. 2000).

Title 29 C.F.R. § 778.215(a) enumerates certain
conditions for the exclusion of an employer's
contribution from the regular rate of pay under section
207(e)(4).  Section 778.215(a)(5) provides:

> [I]f a plan otherwise qualified as a bona fide
> benefit plan under section 7(e)(4) of the Act,
> it will still be regarded as a bona fide plan
> even though it provides, as an incidental part
> thereof, for the payment to an employee in cash
> of all or part of the amount standing to his
> credit . . .(iii) during the course of his
> employment under circumstances specified in the
> plan and not inconsistent with the general
> purposes of the plan to provide the benefits
> described in section 7(e)(4) of the Act.

29 C.F.R. 778.215(a)(5).  The 2003 Opinion Letter
provides that a cafeteria plan may qualify as a bona
fide benefits plan for purposes of section 7(e)(4) if:
"(1) no more than 20% of the employer's contribution is

paid out in cash; and (2) the cash is paid under circumstances that are consistent with the plan's overall primary purpose of providing benefits." Dep't of Labor Op. Letter, 2003 WL 23374600, at *3 (July 2, 2003).

Section 778.215(a)(5) is not a formal administrative regulation; rather, it is "an interpretive guideline, issued on the advice of the Solicitor of Labor and authorized by the Secretary, not an official regulation promulgated after notice-and-comment rule making." Madison, 233 F.3d at 185-86 (citing 29 C.F.R. § 778.1).[13]  Likewise, the 2003 Opinion Letter is an informal agency interpretation. Madison, 233 F.3d at 186.  As such, these documents are not entitled to deference under Chevron U.S.A., v. Natural Resources Defense Council, Inc., 467 U.S. 837

---

[13] 29 C.F.R. § 778.1 provides:
This part 778 constitutes the official interpretation of the Department of Labor with respect to the meaning and application of the maximum hours and overtime pay requirements contained in section 7 of the Act. It is the purpose of this bulletin to make available in one place the interpretations of these provisions which will guide the Secretary of Labor and the Administrator in the performance of their duties under the Act unless and until they are otherwise directed by authoritative decisions of the courts or conclude, upon reexamination of an interpretation, that it is incorrect. These official interpretations are issued by the Administrator on the advice of the Solicitor of Labor, as authorized by the Secretary.

1  (1984).[14]  Rather, the agency interpretations are
2  "entitled to respect" under <u>Skidmore v. Swift</u>, 323 U.S.
3  134 (1944), "but only to the extent they have the
4  'power to persuade.'"  <u>Christensen</u>, 529 U.S. at 587.

5

6      In <u>Skidmore</u>, the Court explained:
7      [R]ulings, interpretations and opinions of the
8      Administrator under this Act, while not
9      controlling upon the courts by reason of their
10     authority, do constitute a body of experience
11     and informed judgment to which courts and
12     litigants may properly resort for guidance.
13     The weight of such a judgment in a particular
14     case will depend upon the thoroughness evident
15     in its consideration, the validity of its
16     reasoning, its consistency with earlier and
17     later pronouncements, and all those factors
18     which give it power to persuade, if lacking
19     power to control.
20  <u>Skidmore</u>, 323 U.S. at 140.  "To be persuasive, an
21  agency interpretation cannot run contrary to Congress's
22  intent as reflected in a statute's plain language and
23  purpose."  <u>Madison</u>, 233 F.3d at 187.

24

25  _____

26  [14] In <u>Chevron</u>, the Supreme Court held that a court
    "must give effect to an agency's regulation containing a
27  reasonable interpretation of an ambiguous statute."
    <u>Christensen v. Harris Cnty.</u>, 529 U.S. 576, 586 (2000)
28  (citing <u>Chevron</u>, 467 U.S. at 842-44).

                              40

1        In its Motion for Summary Judgment, Defendant
2   contends that its cash-in-lieu of benefits payments
3   "generally satisfy the criteria for exclusion" under
4   section 207(e)(4) and 29 C.F.R. § 778.215.  (Def. Mot.
5   at 18.)  Defendant argues that the fact that it "self-
6   administers its own Flexible Benefit Plan should not
7   operate to the City's detriment."  (Def. Mot. at 19.)
8
9        The Court finds 29 C.F.R. § 778.215(a)(5)
10  persuasive.  Section 778.215(a)(5) clarifies that an
11  otherwise bona fide benefit plan under section
12  207(e)(4) remains bona fide even if an employee
13  receives as payment all or a portion of the amount
14  standing to his credit.  29 C.F.R. § 778.215(a)(5).
15  The language of section 778.215(a)(5) does not run
16  contrary to section 207(e)(4).  However, the Court does
17  not read section 778.215(a)(5) to eliminate the
18  requirement of section 207(e)(4) that a contribution
19  must be made to a trustee or third person.  Section
20  778.215(a)(5) only states that a plan can still be
21  considered a bona fide plan even if the employer makes
22  direct cash payments to the employee.  29 C.F.R. §
23  778.215(a)(5).  Section 778.215(a)(5) does not stand
24  for the proposition that those direct cash payments—
25  even if made pursuant to a bona fide plan—may be
26  excludable under section 207(e)(4).  Therefore section
27  778.215 does not eliminate the requirements set forth
28  in section 207(e)(4).

41

1

2      On the other hand, the Court finds the 2003 Opinion

3  Letter unpersuasive and does not resort to it for

4  guidance.  In the 2003 Opinion Letter, the

5  Administrator stated that a plan may qualify as a bona

6  fide benefits plan under section 207(e)(4) if "(1) no

7  more than 20% of the employer's contribution is paid

8  out in cash; and (2) the cash is paid under

9  circumstances that are consistent with the plan's

10  overall primary purpose of providing benefits."  Dep't

11  of Labor Op. Letter, 2003 WL 23374600, at *3.

12  Defendant argues that the 20% maximum requirement is

13  inconsistent with the language of section 778.215

14  stating that a plan is still a bona fide benefits plan

15  even if the plan provides for the payment to an

16  employee of "*all or a part of* the amount standing to

17  his credit."  (Def. Opp. at 14); 29 C.F.R. §

18  778.215(a)(5) (emphasis added).  The Court disagrees.

19  Under section 778.215(a)(5), a plan allowing an

20  employee to receive up to 100% of the contribution in

21  cash could still be a bona fide plan.  29 C.F.R. §

22  778.215(a)(5).  Under the 2003 Opinion Letter, a plan

23  ceases to be bona fide one when more than 20% of *total*

24  *plan contributions* constitute payments to employees.

25  Dep't of Labor Op. Letter, 2003 WL 23374600, at *3.

26  Therefore, the 2003 Opinion Letter is not inconsistent

27  with section 778.215.  In other words, a plan allowing

28  an employee to receive up to 100% of the contribution

can still be a bona fide plan, so long as the total
cash payments to the employees do not exceed 20% of
*total plan contributions.* Therefore, the Court finds
that the 20% ceiling set forth in the 2003 Opinion
Letter does not conflict with the language of section
778.215(a)(5).

The Court, however, finds the 2003 Opinion Letter
unpersuasive for a different reason. There, the
Administrator adopted the 20% limitation from prior
opinion letters. Dep't of Labor Op. Letter, 2003 WL
23374600, at *2. According to the Opinion Letter, the
20% cap "historically has been applied on an employee-
by-employee basis." Id. Therefore, "if a plan allowed
any employee to receive more than 20% of the amount
standing to his or her credit in cash, the plan would
fail to qualify as bona fide." Id. The Administrator
in the 2003 Opinion Letter adopted the 20% test to
apply on a plan-wide basis rather than employee-by-
employee basis. Id. While the Administrator's
interpretation does not run contrary to the language of
section 778.215, the historical background on which the
interpretation is based proves inconsistent with
section 778.215. By applying the 20% cap on an
employee-by-employee basis, the prior opinion letters
ran contrary to the language of section 778.215(a)(5),
which provides that a plan may still qualify as a bona
fide plan even if an employee receives a portion or all

of the contribution as payment.   29 C.F.R. §
778.215(a)(5).   Moreover, the Administrator failed to
discuss the rationale for adopting the same 20% figure
to apply as a limitation on a plan-wide basis.   Rather,
the Administrator simply stated, "[w]e continue to
believe that this 20% cap is an appropriate method for
assessing whether any cash payments are an incidental
part of a bona fide benefits plan under
778.215(a)(5)(iii)."   Dep't of Labor Op. Letter, 2003
WL 23374600, at *2.   Neither did the Administrator
discuss the reasoning behind the DOL's historical
adoption of the 20% cap in prior opinion letters.
Accordingly, under Skidmore, the Court finds the 2003
Opinion Letter unpersuasive since the Administrator
fails to provide any reasoning for adopting the 20% cap
on a plan-wide basis.

### b.   Qualification as a Bona Fide Plan

Plaintiffs argue that since the Plan is not a bona
fide plan, the entire value of each Plaintiff's monthly
benefit allowance should be included in the regular
rate.   (Pl. Mot. at 18-21.)   The majority of
Plaintiffs' argument rests on the premise that
Defendant has paid more than 20% of the total Plan
Contributions to employees over the last four years.
(Id.)   However, as stated above, the Court does not
adopt the 20% limitation as a test for determining

44

whether the Plan is a bona fide one since it finds the
2003 Opinion Letter unpersuasive.  In addition, as
discussed above, since Defendant makes cash payments in
lieu of benefits directly to employees, rather than a
trustee or third party, the cash payment cannot be
excluded under section 207(e)(4).

    Based on the uncontroverted facts, the Court finds
that Defendant's Flexible Benefit Program qualifies as
a bona fide plan.  Under section 778.215(a)(2), the
primary purpose of the Plan is to provide health
insurance benefits to the employees.  (Def. SUF, ¶¶ 18,
20, 24; Pl. SGD, ¶¶ 18, 20, 24.)  Defendant's
contribution is converted into Cafeteria Plan Benefit
Dollars that can be used by the employees to purchase
dental and vision insurance.  (Def. SUF, ¶¶ 20-21; Pl.
SGD, ¶¶ 20-21.)  The employee may then elect one or
more additional benefits to purchase under the Plan.
(Def. SUF, ¶ 22; Pl. SGD, ¶ 22.)  In addition,
Defendant's policy that an employee may opt out of
enrollment in medical coverage under the Plan only
after providing proof of alternative medical coverage
demonstrates that the primary purpose of the Plan is to
provide health benefits to the employees.  (Def. SUF, ¶
23; Pl. SGD, ¶ 23.)  Between 2009 and 2012, the
majority of contributions into the Plan are used for
the purchase of benefits rather than dispensed as
direct cash payments.  (See Pl. SUF, ¶¶ 20, 22, 24, 26;

Def. SGD, ¶¶ 20, 22, 24, 26.)  While the Plan allows
for direct cash payment to employees, as discussed
above, the Plan may still qualify as a bona fide plan
under section 778.215(a)(5).  Based on these facts, the
Court finds that Defendant's Plan is a bona fide plan,
and to the extent that Defendant makes these
contributions to third parties, the Court finds these
contributions excludable under 29 U.S.C. § 207(e)(4).

**E.   Statute of Limitations**

    Plaintiffs content that since Defendant's violation
was willful, a three-year statute of limitations,
rather than the two-year statute of limitations set
forth in title 29 U.S.C. § 255(a), applies.  (Pl. Mot.
at 23-24.)  Title 29 U.S.C. § 255(a) provides that a
three year statute of limitations applies for causes of
action "arising out of a willful violation."  29 U.S.C.
§ 255(a).  An employer willfully violates the FLSA if
that employer "either knew or showed reckless disregard
for the matter of whether its conduct was prohibited by
the statute."  McLaughlin v. Richard Shoe Co., 486 U.S.
128, 133 (1988).  A finding of willfulness requires
more than negligence, and "a completely good-faith but
incorrect assumption that a pay plan complied with the
FLSA" does not render a violation willful.  Id. at 135.

1    The Court finds that Defendant's violation of the
2  FLSA was not willful, and therefore, Plaintiffs' FLSA
3  claim is governed by a two-year statute of limitations.
4  As discussed above, section 207 enumerates alternative
5  grounds for exclusion of payments from calculation of
6  regular rate of pay. See 29 U.S.C. § 207(e).  While
7  the language of section 207(e)(4) clearly makes
8  excludable payments made pursuant to a bona fide plan
9  only if made to a trustee or third parties, the
10 language of section 207(e)(2) does not afford such a
11 clear interpretation.  As discussed above, the Ninth
12 Circuit has not addressed the issue of whether cash
13 payments made in lieu of benefits is excludable under
14 section 207(e)(2).  Since the language of section
15 207(e)(2) is ambiguous and there is no published
16 decision analyzing whether cash payments made in lieu
17 of benefits must be included in regular rate of pay
18 under that subsection, the Court concludes that
19 Defendant's violation was not willful.  See Reich v.
20 Gateway Press, Inc., 13 F.3d 685, 703 (3rd Cir. 1994)
21 (upholding the district court's conclusion that actions
22 were not willful since the case presented "close
23 questions of law and fact" and "a case of first
24 impression with respect to one of the governing
25 exemptions").  Accordingly, the Court holds that
26 Plaintiffs' claims are governed by a two-year statute
27 of limitations under 29 U.S.C. § 255(a).
28

**F.   Adoption of Partial Overtime Exemption**

Title 29 U.S.C. § 207(a)(1) provides that the overtime limit is forty hours per week; an employee working in excess of forty hours per week must receive compensation at a rate at least one-and-a-half times the regular rate of pay.  29 U.S.C. § 207(a)(1). Section 207(k) "offers a limited exemption from the overtime limit to public employers of law enforcement personnel or firefighters." Adair v. City of Kirkland, 185 F.3d 1055, 1059 (9th Cir. 1999) (citing 29 U.S.C. § 207(k)).  "The '7(k) exemption' increases the overtime limit slightly and it gives the employer greater flexibility to select the work period over which the overtime limit will be calculated." Id. (citing 29 C.F.R. § 553.230).  "Under the [DOL] regulations, if the employer selects a seven-day work period, overtime begins to accrue after forty-three hours, and if an employer selects an eight-day work period, overtime begins to accrue after forty-nine hours." Id. (citing 29 C.F.R. § 553.230).

There is no dispute that Defendant is eligible for a section 7(k) exemption.  Plaintiffs are employed as full-time police officers by Defendant. (Pl. SUF, ¶¶ 1-2; Def. SGD, ¶¶ 1-2.)  The issue is whether Defendant adopted such an exemption.  "[Defendant] bears the burden of showing that it qualifies for a section 7(k)

exemption." <u>Adair</u>, 185 F.3d at 1060 (internal
citations omitted).  "Generally, the employer must show
that it established a 7(k) work period and that the
7(k) work period was 'regularly recurring.'" <u>Id.</u>; 29
C.F.R. § 553.224 ("As used in section 7(k), the term
'work period' refers to any established and regularly
recurring period of work . . .").  "Whether an employer
adopted a Section 7(k) exemption is an ultimate fact
that may be decided on summary judgment if the
underlying specific facts are undisputed." <u>Farris v.</u>
<u>Cnty. Of Riverside</u>, 667 F. Supp. 2d 1151, 1157 (C.D.
Cal. 2009); <u>Adair</u>, 185 F.3d at 1060 ("Whether an
employer meets this burden is normally a question of
fact.").

Here, the undisputed underlying facts establish
that Defendant adopted a 7(k) work period and that the
7(k) period was regularly recurring.  Defendant has
utilized a 14-day work period for calculation of
overtime for law enforcement personnel since 1994, and
the number of hours worked by full-time police
department personnel in a bi-weekly period is 80 hours.
(Def. SUF, ¶¶ 1, 3-4; Pl. SGD, ¶¶ 1, 3-4.)  In
addition, Article 10 of the 2005-2007 MOU between
Defendant and POA defines overtime as "all hours worked
over (80) in the two (2) week pay period of employees."
(Def. SUF, ¶ 6; Pl. SGD, ¶ 6.)  The Court finds that
the language of the 2005-2007 MOU establishes a 14-day

work period under Section 7(k) since it specifically identifies a two week "pay period" with overtime defined as hours worked over 80 hours per period.  See Farris, 667 F. Supp. 2d 1151.  Defendant also included that definition of overtime in its Salary, Compensation and Benefits Policy Manual.  (Def. SUF, ¶ 9; SGD, ¶ 9.) While the overtime language in the 2005-2007 MOU has not been incorporated into subsequent memoranda of understanding, Defendant still maintains the practice of calculating and paying overtime based on the 80-hour/14-day pay period.  (Def. SUF, ¶¶ 8, 10; Pl. SGD, ¶¶ 8, 10.)  In addition, Defendant's implementation of a more generous overtime policy than the one set forth in section 207(k) does not negate its adoption of the 7(k) exemption.  See Lamon v. City of Shawnee, Kan., 972 F.2d 1145, 1154 (10th Cir. 1992) ("There is no basis for concluding that, once an employer has opted for the subsection (k) framework, the employer may only pay overtime for hours worked beyond the legal maximum permitted at the regular wage.").

Defendant's scheduling and recording practices also support the finding that Defendant established a 7(k) work period that is regularly recurring.  Defendant assigns certain police officers to a 3/12 schedule under which each employee was assigned three 12-hour shifts one week and four 12-hour shifts in the other, resulting a total of 84 working hours.  (Def. SUF, ¶

13, Pl. SGD, ¶ 13.)  When that schedule was first
implemented, Defendant credited each employee with 4
hours of compensatory time off in each payroll period
to compensate for the 84 hours. (Def. SUF, ¶ 14; Pl.
SGD, ¶ 14.)  Subsequently, pursuant to the MOU,
employees assigned to a 3/12 schedule would be credited
with four hours of compensatory time at time and a half
for the four hours worked over 80 during each work
period. (SUF, ¶ 15; Pl. SGD, ¶ 15.)  Therefore,
Defendant's adoption of a 3/12 schedule demonstrates
that Defendant adopted a regularly recurring 14-day
work period that is used to calculate overtime hours
worked.  In addition, Defendant uses a 14-day payroll
period that coincides with the 14-day work period for
law enforcement personnel. (Def. SUF, ¶ 11; Pl. SGD, ¶
11.)  Defendant requires Plaintiffs to record their
hours worked on a bi-weekly, 14-day "Time and
Attendance Reports" which indicate that they cover a
two-week, 14-day work period, evidencing a work period
that is regularly recurring. (Def. SUF, ¶ 12; Pl. SGD,
¶ 12.)  The Court finds that these facts show that
Defendant adopted a 14-day work period that was
regularly recurring.

    Plaintiffs argue that Defendant has not presented
any evidence that it elected and implemented a 7(k)
exemption since none of the documents cited by
Defendant make any mention of the 7(k) exemption's

application to police officers.  (Pl. Opp. at 23.)
Plaintiffs contend there is evidence to show that
Defendant elected not to adopt the 7(k) exemption with
respect to police officers since Defendant explicitly
adopted a 7(k) exemption for firefighters in other
portions of the Compensation Manual.  (Id.)  The Court
disagrees.

In Adair, the Ninth Circuit held that the employer
"established a 7(k) exemption when it specified the
work period in the [collective bargaining agreement]
and when it actually followed this period in practice."
Adair, 185 F.3d at 1061.  The collective bargaining
agreement language stated, "for purposes of complying
with the Fair Labor Standards Act, the Patrol Division
work period shall be eight days and the Detective
Division seven days."  Id. at 1060.  The court held
that the employer met its burden since it
"affirmatively adopted a work period . . . and it
followed that period in practice."  Id. at 1062.
Plaintiffs argue that Adair is distinguishable from the
facts here since Defendant did not provide any evidence
showing that it adopted a work period for purposes of
complying with the FLSA.  (Pl. Opp. at 23-24.)  While
it is true that Defendant does not expressly mention
the FLSA in its documents relating to wages of law
enforcement personnel, that fact alone is not
dispositive of the issue.

1

2        As the court in <u>Farris</u> noted, "[a] public
3   pronouncement requirement is absent from <u>Adair</u>."
4   <u>Farris</u>, 667 F. Supp. 2d at 1158.   In <u>McGrath v. City of</u>
5   <u>Philadelphia</u>, 864 F. Supp. 466, 476 (E.D. Pa. 1994),
6   the court held that while the "'establishment' of a
7   7(k) work period may be manifested by an appropriate
8   public declaration of intent to adopt a work period of
9   between 7 and 28 days . . . a public employer may
10  establish a 7(k) work period even without making a
11  public declaration, so long as its employees actually
12  work a regularly recurring cycle of between 7 and 28
13  days." <u>McGrath</u>, 864 F. Supp. at 476.   Therefore,
14  section 207(k) focuses on "the establishment of the
15  schedule rather than the exemption." <u>Abbe v. City of</u>
16  <u>San Diego</u>, 2007 WL 4146696, at *12 (S.D. Cal. Nov. 9,
17  2007).  Here, while Defendant did not explicitly state
18  that it was adopting a section 7(k) exemption with
19  respect to law enforcement personnel, the undisputed
20  facts, as discussed above, demonstrate that Defendant
21  has adopted a 7(k) work period that is regularly
22  recurring.  The fact that Defendant explicitly
23  mentioned the 7(k) exemption for firefighters and
24  failed to make such a reference for law enforcement
25  personnel does not change the result. See <u>Abbe</u>, 2007
26  WL 4146696, at *12 ("There is no suggestion in the
27  language of Section 7(k) that an employer must
28  affirmatively invoke the exemption."). As a result,

there is no triable issue of fact as to whether Defendant established a 7(k) exemption.  Accordingly, Defendant is liable to Plaintiffs for FLSA overtime only to the extent that Plaintiffs worked in excess of 86 hours in a 14-day work period.  <u>See</u> 29 C.F.R. § 553.230.

**G.   Liquidated Damages Award**

Before the Court decides the issue of liquidated damages, the Court directs the parties to submit further briefing addressing the issue.  Plaintiffs may file a supplemental brief on the issue of liquidated damages, due by September 18, 2013.  Defendant may file an opposition by September 25, 2013.  The issue of liquidated damages will stand submitted as of September 25, 2013.

/
/
/

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendant's Motion for Partial Summary Judgment and GRANTS IN PART Plaintiffs' Motion for Partial Summary Judgment.  The Court directs the parties to submit further briefing addressing the issue of liquidated damages.  Plaintiffs may file a supplemental brief on the issue, due by September 18, 2013.  Defendant may file an opposition by September 25, 2013.


Dated:  8/29/13        _____

                                  Jesus G. Bernal
                          United States District Judge